We'll hear our second case now, which is Roberts v. Fikes. Ms. Hoffman. Thank you, and may it please the Court. My name is Taylor Hoffman, and I will be giving the opening, respectfully reserving four minutes, for rebuttal by Co-Counsel Kara Kerlin. We are alongside Co-Counsel Ivan Parfenov, and together we represent Petitioner Mr. Terrance Roberts. The question presented here is whether payment of ordinary and necessary business expenses constitute money laundering. In the facts of this case, Mr. Roberts is innocent of money laundering, as his use of receipts as essential payments for the underlying scheme cannot constitute money laundering under the 2008 United States v. Santos decision. Although this is a complicated habeas case, all roads lead to overturning the District Court's decision and to granting Mr. Roberts' 2241 petition. So if a drug dealer, a drug kingpin, has somebody go buy cars to be used in the drug operation, are those purchases money laundering? According to this Court's Santos Doctrine, proceeds means profits, absent legislative action to the contrary. That's not answering my question. If it is an ordinary and necessary business expense, it is not money laundering, Your Honor. And you don't think Justice Stevens' concurring opinion in Santos is to the contrary? No, Your Honor. This Court has understood Santos and Hodge and Lee to define proceeds as profits, and profits is understood as not being ordinary. In all cases? This Court hasn't decided on the drug trafficking issue specifically. Justice Stevens does suggest that drugs, that a drug trafficking scheme cannot fall within this definition of Santos, and therefore this Court might follow that. However, this Court hasn't had the opportunity to address that directly. Well, that poses its own problems in this case, but let's indulge me for a moment. Let's suppose Justice Stevens' approach to the case makes very clear that a business enterprise engaged in trafficking contraband, like a drug operation, does not get to deduct its ordinary and necessary business expenses from the process. We don't go through what Justice Alito called figuring out depreciation rules for cars used in drug dealing and the like. Should there be a distinction between, let's say, drugs and stolen car parts, as in Wooten, a business that engages in stolen car parts? There could still be a distinguishment here. What would that be? Well, Justice Stevens refers exclusively to drug-related offenses and not to car auto parts, whereas this Court could take on car auto parts. He refers to the sale of contraband, right? And I don't want to be coy about it, but my real question for these purposes is, is there a distinction for these purposes between the sale of illegal goods and the sale of illegal services, such as prostitution? Well, Your Honor, this Court has addressed the prostitution arena in Hodge and Lee. In Hodge, the government had forfeited the key argument, as you'll recall, correct? Correct, but in Lee it did not. Lee makes no mention of a concession by the government. All right, so let us suppose there is a question about Lee. From first principles or from Santos, why would we distinguish between sales of illegal goods and sales of illegal services for these purposes? Well, Your Honor, sales of illegal services could mimic what happened in Santos itself. Santos was an illegal gambling operation, so it is akin to illegal services in that way, and so it could be likened in that way, whereas in drugs are uniquely difficult to answer because of their unique harm that they cause. And so this Court's Santos Doctrine says proceeds… Judge Hamilton was asking about Justice Stevens' opinion in Santos, and that also concerns me. If I understand the rule correctly, that's the controlling opinion in Santos, and therefore what we are supposed to follow, not Seventh Circuit decisions, not Eighth Circuit decisions, but Justice Stevens' opinion particularly. And so I want to just repeat what I understood to be Judge Hamilton's question, which is if you just ignore everything said by any court of appeals and ask entirely in Justice Stevens' terms, how does this case come out? Well, Justice Stevens was the fifth and required vote, and we are attempting to understand his opinion, Judge Easterbrook. However, it is a challenging opinion to find the narrowest ground. Indeed. So that is why we can look to… No, I don't want you to look at what courts of appeals have said. I want you to deal only with what Justice Stevens has said because it is the controlling decision. And would you please analyze Roberts' situation in Justice Stevens' terms? That's what at least I'm looking for. Justice Stevens is understood as meaning proceeds means profits in absent legislative history to the contrary. He specifically notes that legislative history is important in his decision. He uniquely held that he could define proceeds differently for different underlying schemes. However… In other words, different topics, drugs, prostitution, lotteries. That is correct. However, Santos only dealt with illegal gambling operations. So it is helpful to look to this court as it has applied Santos to prostitution. And so looking exclusively at Justice Stevens' opinion, proceeds means profits absent legislative history to the contrary. And this court has not found the legislative history to the contrary. And therefore, looking to Mr. Roberts' case specifically, Mr. Roberts did not use profits. Instead, he made ordinary and necessary business purchases, which under Santos is not money laundering. If we look specifically to the facts of this case, the wire… What's your best language from Justice Stevens' opinion for the position you're now taking? Because after he talks about legislative history, he kind of concludes, you know, but here we have a situation where it would be duplicative. That's where you begin to worry about how these things all relate to one another. Well, Judge Wood, I don't have Justice Stevens' opinion right in front of me, so I don't have the language directly in front of me. However, this court has noted in Planned Parenthood of Indiana and Kentucky v. Box that Scalia's interpretation of the plurality properly, quote, addressed how Santos should be read. But that's going against the – I mean you could argue. Some circuits have said that occasionally that fifth vote, the concurring opinion, may not be the common ground among the plurality and that. I mean it's – often it is, you know, under the Marx rule. But are you going to take – do you agree that it's Justice Stevens' opinion we have to follow or does some other rule apply? Yes, we are looking to the narrowness of Justice Stevens' opinion. So he's saying there's no across-the-board rule, basically. Correct. And now we have to decide, though, based on that, which side of the line Mr. Roberts falls on. Yes, there is a line-drawing problem with Justice Stevens' opinion. However, no matter how the court draws this line, Mr. Roberts is clearly on the other as he has only used the money to purchase and make ordinary and necessary business purchases for the underlying scheme. To go back to your point, Judge Wood, we're looking specifically – Box – this court's decision in Box specifically said Scalia took the proper approach to Santos. You mean Justice Scalia? Justice Scalia. Actually, the Planned Parenthood opinion was a little bit different. It was debating the more abstract questions about how to apply this. And it specifically was making clear that not every word of a concurring opinion, such as Justice Stevens' opinion here or Chief Justice Roberts' opinion in the Louisiana abortion case, can be taken as controlling. But we do have here Justice Stevens saying, as you say, if there's legislative history that can distinguish here, I'm going to follow that. And he says not – and what he says is Justice Alito correctly argues that Congress intended the term proceeds to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales. I don't see how Roberts doesn't fit within that. Prostitution is unlike drug trafficking and contraband. It is more similar to the illegal gambling operation that happened in Santos. In what way? It is an illegal service involving a transaction of money and – Use of credit cards? He did use credit cards, as defendants in Hodge and Lee did, in which this court vacated their money laundering charges. And so we find that because of Hodge and Lee, this court hasn't found the legislative history, nor does the government point to the legislative history, which would apply the more narrow ruling or the more broad definition of proceeds that Justice Stevens refers to. And so, again, if we look to the record, the record is rife with evidence that each of these acts charged with money laundering were ordinary and necessary purchases. If we look to the wire transfer, every part of the record indicates this. For example, in the direct appeal, United States v. Evans, it says that the wire transfer was to purchase a Mercedes that was used on prostitution calls. Could I raise, with my colleague's indulgence, one question? You've been arguing this case – As long as judges keep asking questions, you can keep giving answers. Thank you. Ms. Hoffman, you've been arguing the case as if we were here on direct appeal and de novo review. And I wonder if you could address the government's arguments with respect to Aslan and Hosseini, where we rejected similar claims that were subject to plain error review. And I'm trying to understand how we would apply a more generous standard to someone in Mr. Roberts' position seeking relief under Section 2241 than we did to Aslan and Hosseini. It is correct, Judge Hamilton, that Aslan and Hosseini applied a plain error standard review. And habeas – we are currently in a de novo standard review of a habeas petition. We are reviewing the district court's decision de novo. But the question is what Mr. Roberts has to show in order to gain relief by what I will just loosely call a miscarriage of justice. Yes, to be clear – And how clear the actual innocence needs to be. If I remember correctly, the actual innocence standard is a no reasonable juror standard. However, the habeas requirements in 2241 petitions are high. The average petitioner may not reach them. Are they higher than plain error? They're different than plain error, Judge Hamilton. Habeas requires a statutory interpretation case that is retroactive and wasn't available. You got those. The government concedes that. Right. And so, plain error is just – it's different than what we are reviewing here today. And so, we find that trying to compare Aslan and Hosseini – Aslan and Hosseini, a plain error case that did not reach the full merits of the question at hand isn't – is unpersuasive on where we're at today. Thank you. Thank you. Thank you very much. Ms. Stellas. Good morning. May it please the court, as you've already noted, we are here today not on direct appeal, but on the denial of a 2241 savings clause petition. And in order to – and in order to prevail, Roberts must demonstrate actual innocence. He cannot do that for either of his money laundering convictions, and he cannot do that under Seventh or Eighth Circuit law. Because Mr. Roberts is serving identical – identical concurrent sentences for promotional money laundering and conspiracy to – Both sides' briefs use phrases like promotional money laundering. I have no idea what that is, and it's not a phrase used by Justice Stevens. Why should anybody use it? I believe it comes from the language in 1956, which proscribes a financial transaction designed – I assume you agree with Ms. Hoffman that we have to figure out how Justice Stevens' opinion applies to this situation, and that's not in his vocabulary. I'm inclined to think we should use his vocabulary rather than make up our own. And I might just add that there certainly is language in 1956, but that doesn't tell us whether there are different ways in which one might commit the crime of money laundering or whether there are actually two separate crimes embodied in that statute. Justice Stevens doesn't seem to talk about it as two separate crimes. In fact, he's – as Judge Easterbrook says, nothing is there. And so I guess the government is making an assumption that I'm not sure is well founded. Your Honor, I believe the appropriate starting point is the facts of this case. A review of a habeas petition is not the right place to make new law or decide in the first instance the effect of Santos. But what is clear, given this Court's – given the body of concealment money laundering law – There you are again. Now it's concealment money laundering. You've heard from two members of the Court suggesting that we use Justice Stevens' language and not some other phrase. Justice Stevens' language talks about – Justice Stevens' opinion uses language talking about a merger problem, and that is where paying the essential expense of the substantive crime also forms the basis of the money laundering conviction. And when the intention of the financial transaction is to conceal rather than to promote the carrying on of an illegal activity, in most, if not all cases, the government will prove a transaction that's not necessary or a normal part of the underlying substantive offense. And that's what we have here. Counsel didn't address any of the transactions from which the jury could have found concealment, such as converting proceeds from prostitution into cashier's checks, purchasing real estate using non-qualifying assumable home loans to avoid disclosing the nature and the source of the defendant's income, that type of thing. A lot of these things, though, are really both and, in my view, as opposed to either or. It's a little artificial with the credit cards or some of these things to say this was promotional, this was concealment. There were all sorts of advantages to using the credit cards, including running the business and also including making it harder to trace exactly what was going on with the money generated by this business. Yes, Your Honor, and the jury returned a special verdict finding that the financial transactions were undertaken with both intents. Right, they checked both. I saw that. They checked both boxes. So the question, I think, you need to answer, though, is whether, well, there are a couple of questions to answer. One of them is whether, based on all of that, he has, in fact, been convicted for activities that fall outside the scope of 1956, according to Justice Stevens' understanding of the statute, or if you have an alternative view, you can explain to us what that would be. Another thing is the fact that what this all seems to stem from is the district court's wording in the jury instruction that was given to this jury. It just sort of said proceeds, and proceeds under that jury instruction meant everything, not just net proceeds. I think the answer to both of those questions goes back to the standard of review on a habeas petition. It's not the government's burden here to demonstrate that the jury instructions were correct. It's Robert's burden to demonstrate that he was convicted of something that fell within. Right, and he's saying, as a matter of law, these jury instructions described something, I'll just say, outside the scope of 1956. But on a habeas petition, we need to look beyond the jury instructions and go back to that standard of, could a reasonable juror have found him guilty using the correct jury instructions? And he hasn't submitted evidence to clear that burden. Where do you argue for that standard in your brief? I don't think you did. I don't recall it either. I mean, there's a lot of discussion about the Eighth Circuit and the Seventh Circuit and the like, but I really don't remember any well-developed argument of that sort. On page 43, Your Honor, by contrast here, the nature of the financial transaction is unclear. Roberts could have submitted extra record evidence to clarify whether the Mercedes was an essential expense or an investment that allowed the business to expand, citing Boosley. Yeah, that doesn't strike me. The 42. Yeah, it's actually 42 is where you're reading from, but excuse me. Okay. So could I ask you, counsel, to address the role of our circuit's decisions in Hodge and Lee here, specifically with respect to prostitution rings? I don't think that those – first, I don't think that those decisions have much impact here because, as you noted earlier, the government forfeited the benefit of Santos in those opinions. Well, it did in Hodge. What do we do with Lee? Lee, I believe, actually helps the government's position because it explained that Santos left the door open for certain types of money laundering convictions based on payment of expenses that go beyond what's necessary to keep the business going in the status quo and actually expand the business. And it gave a few examples, including paying rent in advance or purchasing advertising that allowed the business to expand in a new geographic market. And applying those examples here, the role of the Mercedes is unclear. It's unclear whether that car was replacing one that fell out of service. Okay. Is that a workable standard for government prosecutions, the necessity of the expenses? Or I'm just – I'm kind of going back to Justice Alito's dissent in Santos about trying to develop generally accepted accounting principles for prostitution and drug distribution and the like. I think so. Two things. I think looking at the purpose of the transaction is much easier than trying to classify a stack of money before it's spent. But to answer your question, it's not necessary to come up with a workable standard going forward here because Congress amended the definition of proceeds, and now proceeds does mean profits for prosecutions going forward. No, it means gross – gross revenues. Gross receipts. I'm so sorry. Right. Yeah. Okay. Okay. But why isn't it the case that, you know, trying to deconstruct Justice Stevens' separate opinion, that you look at different unlawful activities – prostitution is one of them, drug deals are one of them, lotteries are one of them, there could be many others – and you say, you know, what about this? Is this an area under the pre-amendment regime for this law that needs to be viewed as a net proceeds situation, perhaps because of the merger problem that he was concerned about, perhaps because, you know, there's some hint in the legislative history. Who knows what that would be? But why don't we just see, you know, what's prostitution more like? Is it more like dealing with contraband, or is it more like, you know, running an illegal lottery or an illegal gambling operation? The court certainly could do that, and as to how a Mann Act offense would play out under Justice Stevens' concurrence, prostitution isn't the correct comparator. In order to violate the Mann Act, the government only has to prove that the defendant transported a person in interstate commerce for the purpose of prostitution. It doesn't need to prove that prostitution actually occurred or that proceeds were generated. That takes it even further away from contraband, doesn't it? Just putting somebody in your car and transporting them doesn't look at all like contraband. Yes, I guess I'm looking at the second half of Justice Stevens' analysis, which is, you know, there's legislative history and then there's the merger issue. I agree that there are some differences between contraband and Mann Act offenses in terms of comparing goods versus services, but I think from a merger perspective, the point is very strong that convicting someone on the Mann Act offense, none of the transactions here were a necessary or ordinary part of that because violating the Mann Act doesn't require a financial transaction at all. But this is a $2,000 wire transfer to get a car, to transport women to various sites. It seems very close, actually, to the Mann Act core conduct. This is like the, you know, if they bought a computer to use to keep their records on or something like that, then I would think, okay, well, that's pretty far removed from transportation, but a car? The appropriate starting point is what the government needs to prove to secure a conviction for the substantive offense. This is like in Aslan where the Mann Act punishes the scheme, not the success, and this court used that distinction to find a lack of plain error. Who do you think the correct respondent is in these 2241s when somebody's been moved from the place where they were when they filed the 2241 correctly, you know, Oxford, Wisconsin here, to a place outside of the district or outside of the circuit? Outside of the circuit. Last I looked, he was at FCI Sandstone. I know. I was just thinking it was two different things. You know, if you just moved him within the circuit to, you know, the central district of Illinois or something, that might be one thing. Now, he happens to have gone to Sandstone in Minnesota, so he's both out of the district and out of the circuit. So who's the respondent? The respondent is the current warden of the institution where he was incarcerated when he filed the petition. What? What? But he's not in the custody of that person anymore. Yeah. If we issue that person an order, nothing will happen. The respondent has to be the person with custody because that's the only person who can respond to an order. I'm sorry. You're correct. So you think the respondent, we should substitute the respondent, the warden of the Sandstone, Minnesota facility? And who is the warden of Sandstone? The problem is the warden in Sandstone is not within the Seventh Circuit. So, yes, we're all one big happy federal family, but that's the best we can do for that. One could imagine the attorney general. One could imagine the court. One could imagine different potential respondents. But this does come up now and then when we give the government permission to move somebody from Prison A to Prison B. And Prison B doesn't happen to be within our jurisdiction. I'll tell you what, you don't need to flip through. Perhaps you can file a letter with that information. My understanding is that before we grant permission to move, we also require a consent to be bound by the final decision. So the warden of Sandstone, the attorney general may have consented on behalf of the warden of Sandstone to be bound by our decision. I suppose otherwise we wouldn't have allowed the move. But this is something that both parties can address by letter after argument. Who is the right respondent? And is that respondent, assuming it's the warden at Sandstone, going to be bound by our decision? I would be happy to address that in a follow-up briefing. Okay. Thank you. Thank you, counsel. Ms. Kurland. Good morning, Your Honors. I would like to make two points. The first is a point about the application of Seventh Circuit law to Mr. Roberts' case. And the second is regarding the government's contention about Mr. Roberts expanding his business. To discuss the government's contention that the Mann Act does not require any of these essential expenses, I want to point you back to Hodgin Lee. In those cases, this court did not analyze the proceeds based on the underlying act, which I believe was racketeering. They exclusively discussed prostitution. So it was about the essential business expenses of the business, not about the underlying. Is that something Justice Stevens' opinion calls for? Your Honor, Justice Stevens' opinion calls for looking at the legislative history to see if it is to the contrary. So that is where the statute itself could play an applicable part in this analysis, but it doesn't in the prostitution scheme or regarding the Mann Act conviction. Now, we know from Santos, from Hodge, and from Lee that money laundering charges are vacated when they are based on the ordinary and necessary expenses in a prostitution scheme. That is what happened here. It is spelled out in the indictment, in the trial proceedings, and in the post-trial transcript. Mr. Roberts used money from the prostitution business to buy cars that were necessary for prostitution. He used money from the prostitution business that was necessary for the whole prostitution scheme, and that conduct cannot… Now, by the way, in what way is Roberts arguing that he is actually innocent as opposed to arguing that he is entitled to a new trial at which the jury instructions will say you have to find that he engaged in money laundering with net proceeds, which he may well have done? Your Honor, he is arguing that he is actually innocent of money laundering as it was charged. That no reasonable jury could find that he laundered net proceeds. Well, Your Honor, the jury instructions at the trial did not… No, no, look, that just means the jury instructions may well be erroneous under Santos. I'm asking a specific question. Is Roberts arguing that it would be impossible for a jury to convict him if the instructions said you may consider only net profits, whether he laundered net profits, the holding of Xialaba, or what Justice Scalia argued for in Santos? Yes, I don't believe that is what Mr. Roberts is arguing. All right, so we're really looking at an attack on the jury instructions and not an argument about actual innocence. And, of course, this being a collateral attack, one wonders whether you can… The Davenport case says that you can argue actual innocence under 2241, not that you can attack the jury instructions. But the prosecutor, of course, has not made this argument, so whatever the problem is, it's been forfeited. Sorry to have interrupted. I'll give you an extra minute. Sure, Your Honor. May I move on to my next point, or would you like to continue discussing the jury instructions? Well, I see I'm briefly out. I'm almost out of time. Okay, well, the extra minute has now been added. Your account is earning interest. Thank you, Your Honor. My last point that I want to conclude on has to do with the government's contention that Mr. Roberts was expanding his business by purchasing the car. This court in Hodge referred to this type of expense as a capital outlay, which is a long-term business expense, which this court understood to be an essential business expense as long as it indeed was used for the business. And it did not matter that it did have the possibility of being used in future crimes. This court in Hodge, in fact, analogized to Santos, saying that the illegal gambling lottery machines were also capital outlays, and they fully rejected the fact that that wouldn't be considered an essential business expense. So the government's contention that the promotional conviction is valid has no bearing. For all the reasons stated, this court should grant Mr. Roberts 2241 petition. Thank you. Thank you, Ms. Kurland. Ms. Kurland, Ms. Hoffman, and to the Legal Aid Clinic at Northwestern, you have our thanks for taking the appointment in this case and the assistance you've been to the court as well as to your client. The case is taken under advisement, and we will look forward to any submissions either side cares to make about who the right respondent is.